UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE M. RANKINE, an individual; and LAWRENCE S. STANTON, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>ROLLER BEARING COMPANY OF AMERICA, INC., et al.<br><br>Defendants. | Case No. 12cv2065-IEG (BLM)<br><br>**ORDER DENYING DEFENDANT ROLLER BEARING COMPANY OF AMERICA, INC.'S MOTION TO QUASH SUBPOENA**<br><br>[ECF Nos. 73 and 75] |

Currently before the Court is Defendant Roller Bearing Company of America, Inc.'s motion to quash a subpoena served by Plaintiffs Joyce Rankine and Lawrence Stanton on a third-party, The Boeing Company ("Boeing"). ECF No. 75. Boeing did not object to the subpoena. Having reviewed all of the briefing and supporting exhibits submitted by the parties, the Court **DENIES** Defendant's motion for the reasons set forth below.

## FACTUAL & PROCEDURAL BACKGROUND[1]

Baxter Rankine and Plaintiff Lawrence Stanton were the sole owners and shareholders of All Power Manufacturing, Inc. ("APM"), a manufacturer of aerospace bushings. On September 12, 2006, they sold all of their shares of APM to Defendant Roller

---

[1] The following factual summary is taken from this Court's April 5, 2013, order resolving a prior discovery dispute between the parties. ECF No. 64.

Bearing Company of America, Inc. ("RBC"). ECF No. 58 at 3-4. As part of a Stock Purchase Agreement in connection with the sale, RBC executed two promissory notes - one in favor of Baxter Rankine, and one in favor of Lawrence Stanton. Id. Both notes were payable in full on September 12, 2007. Id. Shortly after the promissory notes were executed, Baxter Rankine died, and his wife, Plaintiff Joyce Rankine, became the successor-in-interest to his right to payment under his note. ECF No. 1-1 at 4, Exh. A.

Defendant did not fulfill the payments due under either note by September 12, 2007. Instead, two days before the notes became due, Defendant exercised its right of set-off, claiming that it became exposed to Mexican income taxes. Id. at 5. Plaintiffs disputed that any taxes were owed. On August 11, 2009, the parties executed amendments to both notes, extending the date for payment to June 30, 2012, and limiting Defendant's right of set-off. Id. Plaintiffs allege that Defendant did not make any payments due under either note. Id.

On July 20, 2012, Plaintiffs filed a complaint in state court against RBC and unnamed Defendants. On August 22, 2012, Defendant RBC removed the lawsuit to this Court. ECF No. 1. Plaintiffs' complaint alleges two causes of action for breach of contract relating to Defendant's failure to fulfill its obligations under both promissory notes. Id.

On September 4, 2012, Defendant RBC filed an answer denying the allegations. ECF No. 4. RBC also filed a counterclaim asserting nine causes of action against Plaintiffs. ECF No. 5. Specifically, RBC alleges that prior to the execution of the Stock Purchase Agreement, key APM employees misappropriated and divulged to third parties APM's trade secret information, and then formed a competing business which later became known as Caliber Aero, LLC. Id. RBC further alleges that Plaintiffs failed to provide RBC with all of the intellectual property assets necessary to operate APM. Id.

RBC filed a First Amended Counterclaim on January 23, 2013. ECF No. 42. On February 5, 2013, Plaintiffs moved to dismiss RBC's First Amended Counterclaim on the grounds that any misconduct by key APM employees alleged by RBC occurred after the sale of APM to RBC. ECF No. 43-1 at 4. On May 9, 2013, District Judge Irma E. Gonzalez issued

an order denying Plaintiffs' motion to dismiss RBC's First Amended Counterclaim. ECF No. 70. Plaintiffs subsequently filed an answer denying the allegations set forth in RBC's counterclaims. ECF No. 71.

On June 5, 2013, Plaintiffs deposed Thomas Williams, RBC's general counsel, pursuant to a Rule 30(b)(6) notice. ECF No. 76 at 3-5; ECF No. 76 at 1-7. Mr. Williams testified about an ongoing dispute between RBC and Boeing regarding whether RBC has to pay royalties to Boeing in relation to licensing agreements or assist letters between APM and Boeing. Id. The parties characterize this dispute and its relation to the instant litigation in different ways. Plaintiffs argue that "RBC now contends that in May of 2013 it discovered Plaintiffs breached the parties' Stock Purchase Agreement by failing to disclose the existence of the license agreements between All Power Manufacturing and Boeing." ECF No. 76 at 2. RBC frames the dispute as follows:

> RBC alleges that Plaintiffs misrepresented that the assist letters All Power used to acquire PMAs and TSOs from Boeing were All Power's intellectual property, which they had owned and sold to RBC. However, RBC alleges Plaintiffs had knowledge that such intellectual property was not theirs to sell, and instead was the property of Boeing. Now, following the sale of All Power to RBC, Boeing is demanding that RBC pay royalty/licensing fees before it permits RBC to sell its parts and acquire its PMAs and TSOs.

ECF No. 77 at 2.[2] Regardless of how the dispute is characterized, it is clear that the substance and timing of the PMAs and TSOs between APM and Boeing are relevant to the instant litigation, as are the parties' and Boeing's understanding regarding the applicability of the agreements.

On June 13, 2013, Plaintiffs served a subpoena on Boeing[3] seeking six (6) categories of documents related to Boeing's licensing and royalty agreements with APM: licensing agreements between Boeing and APM related to products sold pursuant to PMAs or TSOs (requests 1 and 2), correspondence between Boeing and RBC and/or RBC's subsidiaries

---

[2] According to Plaintiffs, PMAs are Parts Manufacturer Approvals and TSOs are Technical Standard Orders. ECF No. 76 at 3.

[3] The subpoena was initially issued in the Northern District of Illinois, but was later withdrawn and reissued in the Southern District of California. ECF No. 75, Exh. A.

related to the payment of fees for products sold by APM pursuant to PMAs or TSOs (requests 3 and 4), and draft agreements between Boeing and RBC or RBC's subsidiaries related to products sold by APM pursuant to PMAs or TSOs (requests 5 and 6). ECF No. 75-1 at 5, Exh. A. On July 3, 2013, RBC filed an ex parte motion to quash the subpoena. ECF No. 73. Boeing did not file a motion to quash the subpoena, nor did it join in or support RBC's motion. After considering the motion, the Court found ex parte relief to be inappropriate and issued a briefing schedule. ECF No. 74. RBC subsequently filed an amended motion to quash the subpoena in accordance with the Court's briefing schedule. ECF No. 75. Plaintiffs filed an opposition on July 12, 2013. ECF No. 76. RBC filed a reply on July 18, 2013, and the Court took the matter under submission pursuant to Local Rule 7.1(d)(1). ECF No. 77.

**LEGAL STANDARD**

The federal rules generally allow for broad discovery, authorizing parties to obtain discovery regarding "any matter, not privileged, that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A matter is relevant when it seeks admissible evidence or when the evidence is "reasonably calculated to lead to the discovery of admissible evidence." Id. To the extent that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," the court is directed to limit the scope of the request. Fed. R. Civ. P. 26(b)(2). Limits should also be imposed where the burden or expense outweighs the likely benefits. Id. How and when to so limit discovery, however, remains in the court's discretion.

Where discovery is requested from non-parties, more stringent restrictions should be enforced. The Ninth Circuit has a long-standing policy of affording extra protection to non-parties subject to discovery requests. See High Tech Med. Instr., Inc. v. New Image

Ind., Inc., 161 F.R.D. 86, 88 (N.D. Cal. 1995).[4]  The rationale for this policy is that "[n]onparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of litigation to which they are not a party." United States v. C.B.S., 666 F.2d 364, 371-72 (9th Cir. 1982).  As such, Rule 45 provides that "[a] party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1).  The subpoena should be tailored to request only information reasonably necessary to address specific issues in the case.  See Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792, 813 (9th Cir. 2003).  Failure to do so may justify the imposition of sanctions pursuant to Rule 45(c)(1).  High Tech Med. Instr., 161 F.R.D. at 88.

**DISCUSSION**

RBC moves to quash Plaintiffs' subpoena on the grounds that it is overbroad and unduly burdensome.  ECF No. 75 at 3.  Specifically, RBC contends that all of the subpoena's requests are overbroad because they seek documents related to RBC's subsidiaries that are not parties to this case.  Id.  In addition, RBC argues that Requests Nos. 1 and 2, which seek documents relating to licensing agreements between APM and Boeing, are overbroad because they do not specify any time frame.  Id.  RBC also argues that the subpoena should be quashed because it seeks confidential and privileged information.  Id.  Alternatively, RBC requests that the Court modify the subpoena as follows: (1) limit Requests Nos. 1 through 6 to seek only documents related to RBC, and not any of its subsidiaries; (2) limit Requests Nos. 1 and 2 to seek documents from the time period relevant to RBC's counterclaims; and (3) limit Requests Nos. 1 through 6 to exclude any documents protected by attorney-client privilege and/or attorney work product.  ECF No. 75 at 9.

In their opposition, Plaintiffs assert that the subpoena seeks documents directly

---

[4] See, e.g., Century Sur. Co. v. Master Design Drywall, Inc., 2010 WL 2231890, (S.D.Cal. June 2, 2010) ("Underlying the protections of Rule 45 is the recognition that the word 'non-party' serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery.") (citations and quotations omitted); Kim v. NuVasive, Inc., 2011 WL 3844106, (S.D.Cal. Aug. 29, 2011) ("Non-parties deserve extra protection from the courts.") (citations omitted).

related to RBC's claim that Plaintiffs breached the Stock Purchase Agreement by failing to disclose the existence of licensing and royalty agreements with Boeing.  ECF No. 76 at 3. Plaintiffs dispute RBC's claim that the subpoena seeks licensing agreements between Boeing and all of RBC's subsidiaries as requests one and two only seek licensing agreements between Boeing and APM.  ECF No. 76 at 5.  Similarly, Plaintiffs argue that the remaining requests seek documents between Boeing and RBC and/or RBC's subsidiaries but the requests are limited to documents related to APM.  Id. at 5-6.  Plaintiffs also dispute RBC's claim that the subpoena requests privileged information, arguing that RBC has not provided an evidentiary basis for the claimed attorney-client and attorney work product privileges. Id. at 6.  With respect to RBC's contention that the subpoena seeks confidential material, Plaintiffs argue that the parties' stipulated protective order will limit the disclosure of any such material and will obviate any potential harm to RBC.  Id. at 6-7.  Plaintiffs also argue that the modifications sought by RBC are inappropriate and unnecessary.  Id. at 7.

In its reply, RBC reiterates that the subpoenaed documents are irrelevant and unduly burdensome.  ECF No. 77 at 2-3, 5.  RBC apparently abandons its argument that the subpoenaed documents are privileged as the reply does not mention the issue.  RBC continues to assert that the subpoenaed documents constitute confidential commercial information but fails to explain why the protections set forth in the Protective Order governing this case are insufficient.  Id. at 3-5.  Finally, RBC objects to the production of draft agreements between RBC and Boeing on the grounds that they could benefit Caliber Aero, LLC, an entity that is represented by Plaintiffs' counsel in a case pending in another court.  Id. at 4.  However, as an alternative, RBC asks the Court to designate the documents as "Attorney's Eyes Only."  Id. at 6.

Both parties seek attorney's fees for the cost of litigating this motion.  ECF No. 75 at 10; ECF No. 76 at 8.

As an initial matter, because Boeing did not object to the subpoena, RBC does not have standing to quash the subpoena on the grounds that it is overbroad or unduly burdensome.  See, e.g., Wells Fargo and Co. v. ABD Ins., et al., 2012 WL 6115612 *2

(N.D.Cal. Dec. 10, 2012) ("A party's objection that a third-party subpoena seeks irrelevant information or would impose an undue burden are not grounds on which a party has standing to move to quash a subpoena when the non-party has not objected."); Deployment Medicine Consultants v. Pipes, et al., 2011 WL 811579 *2 (S.D.Cal. Mar. 2, 2011) (explaining that a party has standing to quash a third party subpoena based on a party's proprietary interest in commercial information sought); American Broadcasting Companies, Inc., et al. v. Aereo, Inc., 2013 WL 1508894 *2 (N.D.Cal. Apr. 10, 2013). Accordingly, RBC's only cognizable basis for quashing the subpoena is that it seeks privileged and/or confidential information.

Here, RBC argues that the subpoena seeks "confidential commercial information"[5] and "correspondence and draft agreements" protected by the attorney-client privilege. ECF No. 75 at 8-9. However, as Plaintiffs correctly point out in their opposition, RBC fails to demonstrate how or why the parties' stipulated protective order will not adequately address RBC's privacy interests. In fact, despite Plaintiffs' argument that the protective order will protect any confidential information that is produced by Boeing, RBC does not mention the protective order in its reply, except when it requests that if the Court refuses to quash the subpoena, all produced documents should be designated "Attorney's Eyes Only." ECF No. 75. Given that the stipulated protective order specifically contemplates third-party discovery[6], and provides that any materials produced during the course of such discovery may be designated "Confidential" or "Attorneys' Eyes Only," the Court finds that the stipulated protective order adequately addresses any concerns alleged by RBC regarding the production of potentially confidential commercial information. While RBC does not explicitly abandon its privilege argument, RBC offers no explanation in either its moving papers or reply why its "correspondence and draft agreements" which are in the possession of Boeing

---

[5] Specifically, RBC alleges that the documents sought by the subpoena "include private and confidential pricing, terms and conditions that are specific to RBC." ECF No. 77 at 3.

[6] The parties' stipulated protective order provides that "[a]ny third party producing materials in this action may be included in this Protective Order by endorsing a copy of this order and delivering it to the party requesting materials, who, in turn, will serve it upon counsel for the other [parties]." See ECF No. 40 at ¶ 21.

are protected by either the attorney-client privilege or attorney work product.[7] Accordingly, the Court **DENIES** RBC's motion to quash the subpoena.

Alternatively, RBC asks the Court to modify the subpoena by limiting the definition of RBC to exclude all of its subsidiaries, by limiting the time frame of requests one and two to September 11, 2006 to the present, and excluding "all documents protected by attorney-client privilege and attorney-work product, such as draft agreements and related documents." ECF No. 75 at 9. RBC also asks the Court to designate as 'Attorney's Eyes Only" all of the documents produced by Boeing pursuant to the subpoena. ECF No. 77 at 5-6. Plaintiffs oppose the requested modifications on the grounds that the dispute involves APM, which is an RBC subsidiary, so the requests cannot be limited to just RBC, the time limitation is inappropriate as to the license agreements because most of those agreements were created prior to September 11, 2006, the date RBC acquired APM, and RBC has not established the applicability of either privilege. ECF No. 76 at 7. Plaintiffs did not address the Attorney's Eyes only request because it was raised for the first time in RBC's reply. ECF No. 77.

The Court finds no basis for the requested modifications. Initially, all of the subpoena requests are limited to APM–either agreements with APM or correspondence or draft agreements relating to goods sold by APM. As a result, the requests seek legally relevant information and are not overbroad. Similarly, Plaintiffs limited the requested time frames for requests three though six and provided a credible reason for the lack of a time limitation as to requests one and two. In requesting a time limitation, RBC initially suggested a time frame of September 11, 2006 to the present (ECF No. 75 at 9) but conceded in its reply that some assist letters and agreements in place prior to September

---

[7] RBC provides no evidence that any of these documents were drafted for the purpose of obtaining or providing legal advice. Presumably, these documents may have been drafted or reviewed by RBC's in-house counsel, Thomas Williams. However, merely because Mr. Williams drafted or reviewed a document does not establish that it deserves privileged status. See Oracle America, Inc. v. Google, Inc., 2011 WL 3794892 *4 (N.D.Cal. Aug. 6, 2011) ("When attempting to demonstrate that an internal communication involving in-house counsel deserves privileged status, a party [] must make a clear showing that the speaker made the communication for the purpose of obtaining or providing legal advice.") (internal citations and quotation marks omitted). Moreover, RBC has failed to address how the allegedly-privileged documents retained their privilege status since they now are in the possession of Boeing.

11, 2006 are relevant to the instant dispute (ECF No. 77 at 2). Accordingly, and given that Boeing did not object to the request, the Court finds requests one and two do not need a time limitation. As discussed above, there is no basis for RBC's statement that the draft documents are privileged and the Court finds it inappropriate to modify the subpoena to exclude all draft documents. Finally, as to the request that all documents be designated "Attorney's Eyes Only," RBC has not established a factual basis for this broad request. The Protective Order provides methodologies by which documents can be designated and designations can be challenged. Accordingly, the Court also **DENIES** RBC's requests to modify the subpoena.

## CONCLUSION

For the reasons set forth above, the Court issues the following orders:

1. RBC's motion to quash or modify Plaintiffs' third-party subpoena is **DENIED**. [ECF No. 75]

2. RBC's ex parte motion to quash Plaintiff's third-party subpoena is **DENIED** as moot. [ECF No. 73]

3. RBC's counsel is directed to serve a copy of this Order on The Boeing Company no later than **August 9, 2013**.

4. The Boeing Company is directed to produce all documents responsive to the subpoena no later than **August 26, 2013.**

5. Because the Court finds no merit in RBC's motion to quash, the Court awards attorney's fees in the amount of $1,104.00 against RBC for the costs Plaintiffs incurred in opposing RBC's unsuccessful motion to quash. RBC must pay this award to Plaintiffs by **August 19, 2013** and must file a notice of payment by **August 23, 2013.**

**IT IS SO ORDERED.**

DATED: August 5, 2013

BARBARA L. MAJOR
United States Magistrate Judge